My name is Chen Xiongfan and I represent Petitioner D. Wang on this appeal. Before I begin, I would like to reserve three minutes for rebuttal. The core issue for this appeal is whether substantial evidence exists to support the IJ's finding that Petitioner is not a credible witness in her merit hearing in immigration court. The IJ based his credibility determination mostly on alleged similarities between Petitioner's and passages from declarations from other asylum seekers. The IJ also identified other reasons for finding the Petitioner not credible, but in my view, they are minor and less contentious, so I'll focus my oral argument mostly on the alleged similarities unless your honors would like me to address the other areas as well. It is my contention that no reasonable fact finder could draw any meaningful inference based on the alleged similarities contained in the agency record. The alleged similarities the IJ relied on came from a notice of intent to deny that was issued by USCIS after the Petitioner's asylum interview. The notice of intent to deny contains passages from other asylum seekers declarations, most of which are one sentence in length. It did not contain when these other declarations were submitted to USCIS. It did not identify the interpreter that translated these declarations, and it did not allege that these declarations all came from the same law firm that also assisted the Petitioner in her asylum application. The underlying logic of using similarities to undermine the credibility of a witness is relatively straightforward. Because certain similarities are so unlikely to occur by chance, the witness must have fabricated part of her story. So accordingly, the most natural first question an adjudicator should ask is how likely are these similarities are to occur by chance, taking into account that a country that has a similar pattern of persecution could result in asylum seekers with similar experiences. Here, Petitioner sought abortion while she was in China. We know from the Human Rights Report published by the State Department that the policy of coercive population control is widespread in China. A vast number of people were harmed because of this policy and came to the United States seeking asylum over their years. Given a vast number of people with similar experiences, I would argue that it would be inevitable that two or more applicants would use similar phrases to describe a similar shared experience. These phrases I quote, I was struggling and screaming. During the procedure, I suffered unbearable pain. She must take me to the hospital for a pregnancy test. Under the circumstances, I had to admit that I was indeed pregnant. There are only so many ways to describe these situations. There's only so many ways to describe how one struggles against a government official and how one experiences the pain one feels during a forced abortion. So Mr. Fan, if I may interrupt you for a moment. Yeah. What is your position with respect to what the Petitioner had to be provided in order for the agency to meet the notice requirement of RPK? Does it have to be the copies of the other statements or is there something else that would suffice? I was going to address that point next. So the issue is under RPK is the operating word being meaningful notice. For notice to be meaningful, there must provide the Petitioner an opportunity to refute the implication. And in my view, the notice that was given, just simple passages that was taken from other assignment documents is insufficient because it negates two possible ways for the Petitioner to refute the implication. One is that both of which were actually identified in the seminal case on matter of RPK. One possible explanation that the Petitioner is prevented from using is that the similar wording was a result of the interpreter's particular use of language choice during the translation process. This issue actually did come up during the trial process. Petitioner's counsel offered testimony from an interpreter, the same interpreter that Petitioner's counsel presumably believes was the translator that translated all the declarations. What's your basis for thinking it was the same interpreter who translated all these? Obviously, you didn't get the identity of the interpreter for all these other statements. Your Honor, that is precisely my point. This is what I presumably believe what the Petitioner's attorney believed at the time based on how he presented the evidence. There's no conclusive evidence on the record to prove that who actually is the interpreter that translated all the declarations. And that is precisely the problem I'm identifying. Your argument is that Petitioner might have not used the words struggling and screaming. She might have used in her native language words that had the same meaning as struggling and screaming. And this interpreter interprets that and writes it the same way for other people, for everybody. Yeah. So are there, like, are there, I can think of more than one way to express that struggling and screaming in English. Are there more than one way to express it in Mandarin? Your Honor, there's no, well, I cannot answer that question without relying on outside knowledge, but I would like to point out that there are a vast number of asylum applications that have been submitted on the basis of forced abortion. Even if there are multiple ways of expressing the same experience, it is inevitable that some of these applications, given the vast number of them, would use similar phrasing in describing their experiences. Furthermore, the point I was trying to make is about meaningful notice. Because the asylum came from respondents, the Petitioner is prevented from arguing that the interpretation was a result of using the same interpreter because it's impossible to conclusively prove which interpreter translates these documents. It is not provided to the Petitioner and the Petitioner is prevented from using that argument. Additionally, Petitioner is also prevented from using the argument that Petitioner is the one that was actually being plagiarized because the time frame of the other applications is entirely unclear. If these other declarations were submitted after the Petitioner's application, it could be entirely possible that the other applications were fictitious and they were the ones that copied the Petitioner. Both of these circumstances are common explanations for the similarities and they were specifically identified in the seminal case matter of RKK. Because the immigration judge failed to provide the source of these documents, Petitioner is prevented from using these arguments. That's why I argue that the notice that was given to the Petitioner was not meaningful. How does the agency deal with the requirement of confidentiality that it has to the other asylum applicants? Is just redacting their names sufficient? Well, it should definitely be more than just passages, just one or two sentences. They can redact the name of the asylum seekers, the location that it took place, and even the country where it comes from would be irrelevant. But they would redact the key information that was identified to them and they could provide the contact information of the interpreter who provided the interpretation. Did you request the actual statements? I'm sorry, I don't know if you're counsel at the hearings, but did counsel at the immigration hearings request copies of the actual statement so that that issue was presented and then perhaps litigated as to whether they could be redacted to satisfy the confidentiality regs? Yeah, Your Honor, I'm not the trial counsel and based on the agency record, I don't know the answer to that question. I don't have outside knowledge as to whether that was requested. So I actually also identified two omissions of Petitioner but did not include the Inker Declaration and used these omissions as another reason for holding that the petitioner is not credible. The two omissions were that the government officials threatened to slap the petitioner if she did not shut up and that the petitioner resisted when demanded that she remove her clothes before the abortion operation. So IJ believes these to be additional and more compelling reasons for one's fear of returning to the country of persecution and reasons that because these details were omitted from the declaration, it reflects negatively on the petitioner's credibility. I would like to emphasize that the core of the petitioner's claim is the experience of her first abortion and the scar that the experience left her. Being threatened to be slapped in the face and resisting removal of her clothes are minor leading up to the actual abortion operation. It is hardly way more compelling reason for one's fear of persecution than the actual experience of the forced persecution and loss of one's unborn child. We are reviewing this to see if the adverse credibility determination is supported by substantial evidence and the immigration judge also made a credibility determined based on demeanor during the hearing which is entitled to a particular deference because the immigration judge was there and we are not. So how can we set aside this adverse credibility determination and conclude it's not established by substantial evidence when it was based at least in part on a determination of the petitioner's credibility based on her demeanor finding it's particularly given on special deference. However, all evidence must be viewed in light of the credibility determination must be viewed in light of all the evidence provided. If absent of the point that I already argued, if it was just based on this demeanor observation, I would think that it would be insufficient to satisfy the substantial evidence standard. But we're looking at a totality of the circumstances, correct? Yes. So it sounds like what you're suggesting is we consider each part of the adverse credibility determination in isolation. Okay, well, I mean, it's difficult to determine exactly how much what percentage weight is given to each of the components that makes up totality of the circumstances. As I've argued, the first point, the first two points that I actually relied on is based on faulty reasoning. And absent of these, absent of the things that I already discussed, just based on demeanor alone, it would not substantiate a decision of adverse credibility finding. Counselor, did you want to reserve some time? Yes, I would like to reserve three minutes for Okay, well, okay. Thank you. Then we'll hear from Ms. Lesnow. May it please the court, Jessica Lesnow on behalf of the Attorney General. The court should deny the petition for review because Wang has not shown that the record compels reversal of the agency's determination denying her applications for asylum and withholding removal. And of course, she's waived her claim for cat protection. First, and getting to the bulk of the discussion with the opposing counsel, substantial evidence supports the agency's adverse credibility finding because it was based on specific and material similarities between Wang's asylum application and those of other unrelated asylum applicants. Could I ask about the compliance with the RKK case? It seemed to me that the IJ at least technically didn't comply with the first step because the IJ didn't identify on the record the similarities between the documents or other evidence and didn't provide Wang with copies of statements or documents in question. So I think the government argues, well, it was good enough that she already had them from DHS, from the government as part of the pre-proceeding. But do you agree that the IJ at least technically didn't comply with the procedural requirements? I think we would disagree with that, Your Honor, and let me explain why. In order to get to the answer to this question, we have to look at the heart of the board's decision in RKK, of course, previously informed by the Second Circuit's decision in Yi. And what the board in RKK was most concerned with was making sure that there were procedural safeguards in place for non-citizens in proceedings where there were allegations that there were inter-proceeding similarities. Now, here, we're looking at a case with a slightly different procedural posture than many of the cases that make up the precedent informing this case because rather than being initiated by a notice to appear, which was issued here, this case started before Citizenship and Immigration Services. So CIS made its determination and then the IJ, as the board concluded, permissibly and properly relied on that determination. And I'd also like to add that RKK's concern with the procedural requirements is specifically a concern that the non-citizen is aware of the similarities between her application and the other applications. And here, there's no doubt that Wang was made aware of the similarities. We know that based on CIS's notice of intent to deny that NOID is all referred to it. And we also know that because Wang responded to the alleged similarities initially in pre-hearing briefing, she anticipated or her counsel anticipated that this issue was going to arise. And because of a prior order that the immigration judge issued, so she preliminarily offered pre-hearing briefing on it. It was obviously the reason that she was in proceedings before the IJ because CIS referred the case to the IJ. So the CIS determination very much provided the backdrop to the immigration proceedings. And as the board found, the IJ permissibly relied on the CIS determination and concluded petitioner clearly had notice of the similarities in the application. And how does counsel, I guess what concerns me about that is RKK addresses meaningful notice. So I agree that she had noticed that there was an allegation that they were in proceeding similarities, but she didn't really have much else. She had snippets that were quoted in the NOID. But as Mr. Pham noted, she didn't know the dates of those statements, whether they were before or after her hearing. She didn't know the interpreters involved. She didn't have any context in which those snippets were stated. She was getting very minimal information to which she attempted to respond. But what does RKK require? What is meaningful notice? If it's not an actual, say, redacted copy of the statement to comply with the confidentiality requirements, which was what was provided in both RKK and Yee, what is it? What can be meaningful notice here? How little does the agency have to provide to put a person on notice? Well, Judge, I would direct the court just right to the RKK's language. The board lays it out and they initially emphasize that the concern is to preserve the fairness of the proceedings. And then they outline the steps. The first, of course, as you noted, being meaningful notice. And doesn't RKK say, and they should give the petitioner the statements? That's right, Your Honor. RKK does say first that the immigration judge should identify the similarities to make sure that the non-citizen is on notice of the similarities. And then it does go on to say that the IJ should provide with copies of the documents in question. And it seems that they're saying that so that the non-citizen in proceedings can have the opportunity to then respond so that the non-citizen is aware of what the similarities are. And our argument is that that is exactly what happened here. In other words, if the applicant responds as best they can to what they've been given, then that blesses what they were given. That means it was enough because they made an attempt to respond. I think that it demonstrates that the non-citizen has been made aware of what the similarities are in compliance with the meaningful notice standard. So, yes. In other words, yes. If she had said, I can't respond to this, then you would be making a different argument. But in your view, the notice was good enough. Right. And I think that it's also important to note here that Weng has essentially accepted that these similarities exist. At no point before the immigration judge, at no point in briefing, does petitioner say, we disagree. There are no similarities here. That's not what happened. They never denied. She never disavowed her statement that this is not what I said. This was not my story. Actually, aren't there some discrepancies in some of these snippets that are included in between those and what she actually said? It's not word for word. Sorry, can you please repeat the last part of your question, Judge between what the snippets were that were cited in the NOID and what Weng actually testified to? It's not verbatim. And if we had the rest of the statements, we could maybe put it in context and determine whether it's actually the same story or not. And I think that, you know, first, it is difficult to know here because we don't have all of the complete statements. But we do have those snippets that were pointed out, the extracts, that you will. And I do want to go back to what was previously emphasized, which was the concern that the board and RKK and Footnote 3, it was expressed for the privacy of other asylum applicants. And you know, weighing or balancing the nonsense and having noticed, being able to see the similar statements versus an entire unredacted statement. I don't think the petitioner here is arguing that they should get an entire unredacted statement. In fact, I didn't hear Mr. Phan say, although the briefing suggests it has to be a copy of the statement, that there could be something that's actually the whole statement that would be sufficient. But in RKK, because the similar affidavit was submitted by the petitioner's brother, and the brother waived confidentiality, it was produced. So it didn't become an issue. And in Yee, the government agreed that the statements could be produced as redacted. So the statements were provided in both of those cases. That's right, Your Honor. I'm sorry, go ahead. I wanted to go back to the observation that was made earlier, which was, and opposing counsel was not able to definitively speak to this, but at no point in the record did petitioner's counsel at the time, Mr. Murray, request the redacted or complete other statements with redactions of the other applicants. Another noticeable aspect of this is that petitioner is arguing that the immigration judge bore the burden in this case. And that's not what the standard is, right? An asylum applicant bears the burden of proving by credible evidence that she is eligible for relief. The immigration judge, on the other hand, must first, of course, assess credibility under the totality of the circumstances, and then comply with the procedural aspects or the procedural framework of the matter of RKK. And our argument is that that was done here. So are there, counsel, are there other instances? So this case strikes me as very different from Yee and RKK. In Yee, you have what appears to be an attorney using the same affidavit with multiple clients, or at least more than one client. So the IJ recognized the declaration, having seen it before. And in RKK, it involved an application from the petitioner's brother, and the stories were the same. This is more along the lines of the forced abortion. Are there other cases where the interproceding similarities have not been as stark as they were in Yee and in RKK, where the board has concluded that the IJ's interproceeding similarity finding is supported? Not that I've been able to clearly identify, Your Honor. And there have been some other decisions after briefing here, but not in this circuit. So for example, the Fifth Circuit just came down with a published case, and it was Singh versus Garland. And in that case, we're at the other end of the spectrum, where the Fifth Circuit said that the judge just noted that there was an emerging pattern or eerie similarity, that a wave of respondents had a similar claim, but then failed to actually notify of any specific similarities. And so the Fifth Circuit there said that was not enough. But this is not quite where we were at with RKK and Yee, and I agree, because there wasn't the submission of the complete statement redacted, albeit in the other applications. But I also want to touch on another thing that was discussed, which is that these similarities would naturally occur in any forced abortion claim. And like CIS determined, and the agency also determined, we think that the similarities here were too pervasive in form and in detail of the story. So the agency, nor CIS, were convinced that the explanations that Wayne provided for why those were so similar was sufficient to demonstrate your credibility. And we think that that determination is of deference, of course, under substantial evidence. CIS said that the phrases were too idiosyncratic to differentiate or to make them just perchance similar accounts. And another thing that the board and the immigration judge noticed here is that the translator, Mr. Lin, accompanied Wang at the CIS interview, where she was confronted with the similarities in 2013, but there was no explanation by Lin at that interview as to his translation being the reason why those similarities existed. That didn't come until Lin issued his statement in preparation for this litigation in 2017. Oh, she doesn't know. I mean, the agency rejected the explanation that perhaps it was due to translation and said, well, you haven't shown that it was the same translator, but she doesn't know that. How was she supposed to show that based on what she was given? I think, Your Honor, that that is one possible explanation. But again, I think that asylum, as you noted, applicant bears the burden here of demonstrating credibility, demonstrating that once these, as RKK and Yee identified, once these similarities are identified in proceedings, then a close eye needs to be put upon the applications. And so that's what we think that the agency... Wait, I think the language you're quoting from Yee about viewing this very closely was with not the application, but you have to proceed cautiously because of the likelihood that there could be similar accounts when people suffer similar persecution. Sure. And they did note that a translation discrepancy could be one of those similarities, but the immigration judge didn't have the evidence in the record of who translated the other We can't say that the immigration judge erred in not considering it. All right. Thank you, counsel. Mr. Wang. Mr. Dan, sorry. Ready, Your Honor. I would like to address two points. First, with regard to the government counsel's argument that it is the petitioner's responsibility in trial that her trial attorney should have requested an unredacted version of the declaration. I just simply disagree with the government counsel's interpretation of law on this point. RKK is clear in that the trial judge, the immigration judge must provide meaningful notice to the petitioner, not the other way around. But isn't the question whether the petitioner objected to the IJ's procedure and said it's inadequate under RKK and we need a full document? Did she raise that objection? You don't know whether she raised that objection, but the record doesn't show that. Right. It was not raised, Your Honor. But nonetheless, the trial judge must, the IJ is clear that the immigration judge must provide meaningful notice to the petitioner and they did not provide meaningful notice in this case. And I would like to further address the point that the government counsel made that the agency believed that these similarities are so idiosyncratic that it warrants a finding that the petitioner is not credible. I mean, specifically, the NOIC identified a few phrases that they believe are so idiosyncratic. One is that I was being asked to lie in a sickbed and the other is dragged into an operation room. I simply failed to see how these are, the way it was formulated that is so idiosyncratic that no other applicants would experience similar circumstances, would use similar language. I was being forced to undergo a forced abortion under the circumstance would in some way be asked to lie on a sickbed after the operation to recover. I mean, the entire circumstances that they were being forced into the operation room, there's very little ways to describe how they were taken into the operation room. While substantial evidence on standard is deferential, I simply believe that no reasonable fact finder under the circumstances would believe that these similarities are so idiosyncratic that it would justify a negative credibility finding. And with that, I rest, Your Honor. Okay, thank you. Thank you very much, counsel. Wang V. Garland will be submitted.
judges: WARDLAW, IKUTA, BADE